**2122-CC00512**

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| MATTHEW CARRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| TLG 634 GRAND LLC, | ) | Div No. _____ |
| d/b/a THE ANGAD ARTS HOTEL, | ) | |
| | ) | |
| Serve: WITHHOLD SERVICE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THYSSENKRUPP ELEVATOR | ) | |
| CORPORATION, | ) | |
| | ) | |
| Serve: Prentice Hall Corp. System | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, MO 65101 | ) | |

## PETITION

COMES NOW Plaintiff Matthew Carron, through his undersigned attorneys, states the following for his claims and causes of action against Defendants TLG 634 Grand LLC d/b/a the Angad Arts Hotel, and ThyssenKrupp Elevator Corporation:

## INTRODUCTION

1.      In the early morning hours of October 20, 2019, Plaintiff Matthew Carron and a friend were returning to a room at the Angad Arts Hotel in St. Louis, Missouri. The pair got on an elevator at the ground floor, but before reaching their destination, the elevator stopped moving, trapping the pair. They both tried calling for help, but there were no responses to their pleas. Pressing the call button in the elevator only resulted in an automated response. The trapped elevator riders heard sounds from somewhere above them, so Matthew tried jumping and hitting the ceiling of the elevator as a way to alert others to their plight. After his second jump, Matthew came down

Exhibit 1

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

significantly injured; contacting the ceiling of the elevator amputated the ring finger on his left hand and degloved his pinky finger.

## PARTIES AND VENUE

2.      Plaintiff Matthew Carron (herein "Plaintiff") was at all times mentioned herein a resident of O'Fallon, Missouri.

3.      Defendant TLG 634 Grand LLC d/b/a The Angad Arts Hotel (herein "the Hotel") was at all times mentioned herein a domestic corporation registered and operating under the laws of the State of Missouri.

4.      The Angad Arts Hotel is a self-described "luxury hotel" located in St. Louis, Missouri that holds itself out as being open to members of the general public.

5.      Defendant ThyssenKrupp Elevator Corporation (herein "TKE") was at all times mentioned herein a foreign corporation, operating under the laws of the State of Missouri and engaged in the business of manufacturing and selling products into the stream of commerce, including in the State of Missouri.

6.      The Angad Arts Hotel, where the events described herein occurred, is located at 3550 Samuel Shepard Drive, in St. Louis, Missouri, and therefore location and venue are proper.

## FACTS COMMON TO ALL COUNTS

7.      Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

8.      On or about October 19, 2019, a friend of Plaintiff's checked into a room she rented at the Angad Arts Hotel.

9.      Plaintiff's friend invited him to use the hotel room that she had rented.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

10.     On or about 1:45 am on the morning of October 20, 2019, Plaintiff and a friend returned to the Angad Arts Hotel, intending to use the room rented by Plaintiff's friend.

11.     Plaintiff and a friend entered the lower portion of the Hotel from Samuel Shepard Drive and pressed the call button on the elevator bank to summon an elevator to take them to their room.

12.     Plaintiff and his friend got into the elevator, inserted their room keycard into the slot in the elevator, and pressed the button to go to their floor.

13.     Shortly after beginning its ascent, the elevator came to a sudden stop. The doors did not open to let the pair off the elevator.

14.     The floor display panel in the elevator did not show any indication where they were stopped.

15.     Plaintiff pressed the "call" button to alert someone they were stuck in the elevator. After pressing the button, Plaintiff and his friend heard a voice say, "Please proceed to the open door." They attempted to communicate with the voice coming through the speaker, but never received any reply.

16.     After waiting a few minutes, Plaintiff pressed the call button again. Once more, they heard a voice which asked them what floor they were on. Both replied they did not know because the display in the elevator was not working. Again, they received no reply.

17.     Upon information and belief, the call button system was not staffed by a live attendant or person, but rather was an automated machine.

18.     Plaintiff believed that if the elevator car was stuck at a floor, he might be able to pry open the elevator doors to free them. Upon pulling open the doors and looking out, Plaintiff saw only concrete walls, indicating the elevator was stuck between floors.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

19.     Once it became clear to Plaintiff that the call button system was ineffective and/or defective, Plaintiff became concerned that they might not be discovered for quite some because it was approximately 2:00 am and it was unlikely that there would be a significant amount of traffic in the hotel at that time.

20.     Plaintiff and Plaintiff's friend became scared that they were going to be trapped for an extended period of time.

21.     Plaintiff and Plaintiff's friend became scared that the elevator car may crash.

22.     Plaintiff and Plaintiff's friend were unable to use their cellular phones to call for help because both phones indicated they had no signal from within the elevator car.

23.     Shortly thereafter, Plaintiff heard what sounded like voices coming from somewhere above the elevator.

24.     Plaintiff jumped up, yelled for help, and struck the ceiling of the elevator with his hand to make a loud noise so as to draw the attention of anyone who might be nearby to help.

25.     Plaintiff jumped a second time, striking one of the elevator ceiling tiles with his hand hard enough to lift the panel from its base.

26.     When Plaintiff landed from the second jump, he found that his ring finger had been amputated, and his pinky finger of the same hand had been degloved.

27.     The elevator in question where this incident occurred was designed, manufactured, and/or installed by Defendant TKE.

**Missouri's Safety Code for Elevators**

28.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

29.     The Missouri Code of State Regulations, Title 11, Div. 40, Chapter 5, "Elevators", by and through Missouri's Elevator Safety Board, has adopted American Society of Mechanical Engineers ("ASME") 17.1 "Safety Code for Elevators and Escalators" (herein "The Code") as applicable to all elevators and installations within the State of Missouri.

30.      The purpose of the Code is to provide for the safety of life and limb, and to promote the public welfare. *See* The Code, § 1.2.

31.     The Code contains the following provisions:

a.      **§ 2.14.1.2.3**: Enclosure linings, decorative panels, light fixtures, suspended ceilings, and other apparatus or equipment attached within the car enclosure shall be securely fastened and so supported that they will not loosen or become displaced in ordinary service, on car safety applications, or on buffer engagement.

b.      **§ 2.14.1.2.4**: Panels attached to the car enclosure for decorative or other purposes shall either (a) not be unfastened from inside the car by the use of common tools; or (b) be permitted to be removed from inside the car when perforations, exceeding that which would reject a ball 13 mm (0.5 in.) in diameter, in the enclosure used for panel hanging or support have permanent means to prevent straight through passage beyond the running clearance.

c.      **§ 2.27.1.1.1**: A two-way communications means between the car and a location staffed by authorized personnel shall be provided.

d.      **§ 2.27.1.1.2**: When the two-way communications location is not staffed 24h a day, by authorized personnel who can take appropriate action, the means of two-way communications shall automatically be directed within 30s to an additional on-

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

or off-site location, staffed by authorized personnel, where an appropriate response can be taken.

e.        **§ 2.27.1.1.3**: The two-way communication means within the car shall comply with the following requirements: (a) In jurisdictions enforcing NBCC, Appendix E of CSA B44, or in jurisdictions not enforcing NBCC, ICC/ANSI A117.1. (b) A push button to actuate the two-way communication means shall be provided in or adjacent to a car operating panel. The push button shall be visible and permanently identified as "HELP." The identification shall be on or adjacent to the "HELP" button. When the push button is actuated, the emergency two-way communication means shall initiate a call for help and establish two-way communications. (c) A visual indication on the same panel as the "HELP" push button shall be provided, that is activated by authorized personnel, to acknowledge that two-way communications link has been established. The visual indication shall be extinguished when the two-way communication link is terminated. (d) The two-way communication means shall provide on demand to authorized personnel, information that identifies the building location and elevator number and that assistance is required. (e) After the call acknowledgement signals are sent [2.27.1.1.3(c)], the two-way voice communications shall be available between the car and authorized personnel. (f) The two-way communications, once established, shall be disconnected only when authorized personnel outside the car terminate the call. (g) The two-way communication means shall not use a handset in the car. (h) The two-way communications shall not be transmitted to an automated answering

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

system. The call for help shall be answered by authorized personnel. (i) Operating instructions shall be incorporated with or adjacent to the "HELP" button.

f.      **§ 2.27.1.1.4**: Where the elevator rise is 18 m (60 ft) or more, a two-way voice communication means within the building accessible to emergency personnel shall be provided and comply with the following requirements: (a) The means shall enable emergency personnel within the building to establish two-way voice communications to each car individually. Two-way voice communication shall be established without any intentional delay and shall not require intervention by a person within the car. The means shall override communications to outside of the building. (b) Two-way voice communications, once established, shall be disconnected only when emergency personnel outside the car terminates the call. (c) Once the two-way voice communication has been established, the visual indication [see 2.27.1.1.3(c)] within the car shall illuminate. The visual indication shall be extinguished when the two-way communication is terminated. (d) Operating instructions shall be incorporated with or adjacent to the two-way voice communication outside the car. Instructions shall conform to 2.27.7.3.

g.      **§ 8.4.4.1.1**: The requirements specified in 2.14.1.5 shall apply except that the emergency exit shall be so arranged that it can be opened from within the car by means of a keyed spring-return cylinder-type lock having not less than a five-pin or five-disk combination and opened from the top of the car without the use of a key. The key required to open the emergency exit lock shall be kept on the premises in a location readily accessible to authorized persons, but not where it is available to the public. No other key to the building shall unlock the emergency

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

exit lock except that where hoistway access switches conforming to 2.12.7 are provided, the key used to operate the access switches shall be permitted to also unlock the top emergency exit. This key shall be Group 1 Security (see 8.1).

h. **§ 8.4.4.1.2**: The top emergency exit shall be provided with a car door electric contact conforming to 2.14.1.5.1(f) and so located as to be inaccessible from the inside of the car. The opening of the electrical contact shall limit the car speed to not more than 0.75 m/s (150 ft/min).

32.     The Missouri Code of State Regulations, Title 11, Div. 40, Chapter 5-080 states:

(A) Prior to the operation of any elevator equipment, which has undergone an alteration or major repair and prior to the issuance of a new operating certificate, the elevator equipment shall be inspected by a licensed inspector. Testing must be performed by a licensed mechanic in accordance with these rules and regulations. The testing must be witnessed by a licensed inspector. An inspection report shall be filed with the department or its authorized representative, installing contractor and the owner, operator, lessee, or agent of either, by the licensed inspector within ten (10) days after completion of the inspection. The inspection report shall be on a form furnished and approved by the department or its authorized representative. It shall indicate whether the elevator equipment was installed in accordance with the plans and specifications approved by the department or its authorized representative and meets the requirements of these rules and regulations.

33.     The Missouri Code of State Regulations, Title 11, Div. 40, Chapter 5-090 states:

(2) **Periodic Inspections**. (A) The owner, operator, lessee, or agent of either of any elevator equipment as described herein shall have it inspected, every twelve (12) months, as defined by sections 701.350-701.380, RSMo and these rules and regulations. The inspection may be made within thirty (30) days prior to or thirty (30) days following the anniversary date of the initial inspection. Other variations to the twelve- (12-) month inspection period may be authorized by the chief elevator inspector as deemed necessary to schedule inspections in remote locations or for multiple elevator equipment situations. (B) Any inspection required by sections 701.350-701.380, RSMo and these rules and regulations shall be made only by inspectors licensed in accordance with the provisions of sections 701.350-701.380, RSMo and 11 CSR 40-5.120 of these rules and regulations. (C) In addition to required inspections, the department or its authorized representative may designate a licensed inspector to make such additional inspections as may be required to enforce the provisions of sections 701.350-701.380, RSMo and these rules and regulations.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

34.     The Missouri Code of State Regulations, Title 11, Div. 40, Chapter 5-010 states that the purpose of these rules and regulations is to set "minimum safety standards" for "all elevator equipment". Further, the aforementioned rules and regulations "are intended to protect the general public, invitees, guests, employees, and all persons who could reasonably be expected to use elevator equipment."

35.     Both Defendants knew, or should have known, that the elevator was in an unreasonably dangerous condition prior to Plaintiff's injury.

<u>COUNT I</u>
**NEGLIGENCE OF DEFENDANT TLG 634 GRAND LLC**

36.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

37.     The Hotel, as the owner and operator of an elevator in the State of Missouri, had a duty to exercise the highest degree of care to passengers of its elevators, including Plaintiff. *Davidson v. Otis Elevator Co.*, 811 S.W.2d 802, 804–05 (Mo. Ct. App. 1991) ("[O]wners of elevators have been considered common carriers who owe passengers the highest degree of care.").

38.     The Hotel breached its duty of care to Plaintiff, by and through the acts and/or omissions of its agents and employees, in one or more of the following ways:

      a.     Failing to ensure that the decorative panels and/or suspended ceiling at the top of the elevator in question were adequately supported and sufficiently secure so that they would not become displace or dislodged in ordinary service;

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

b.   The Hotel failed to ensure that the decorative panels and/or suspended ceiling at the top of the elevator in question could not be loosened or removed without the use of common tools;

c.   Failing to ensure authorized personnel were staffed to maintain and monitor two way communication between the Hotel and elevator occupants;

d.   Failing to ensure that additional on- or off-site locations would be staffed by authorized personnel to receive two-way communication from occupied elevators;

e.   Transmitting the two-way communication from the elevator to an automated answering system, not authorized personnel designated to answer such calls;

f.   Prematurely terminating the two-way communications with the elevator car which contained Plaintiff without verifying his safety;

g.   Failing to ensure that an appropriate escape mechanism was in place to allow trapped occupants to escape the elevator; and

h.   Failing to ensure that the elevator in question was properly inspected prior to being put into use by the general public.

39.   As a direct and proximate result of the foregoing acts of negligence of the Hotel, by and through its agents and/or employees, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

40.     The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff Matthew Carron prays for judgment against Defendant TLG 634 Grand LLC d/b/a The Angad Arts Hotel on Count I of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

<u>COUNT II</u>
**NEGLIGENCE *PER SE* OF DEFENDANT TLG 634 GRAND LLC**

41.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

42.     The Hotel violated multiple sections of The Code, thereby constituting negligence *per se*, to wit:

a.     The Hotel violated § 2.14.1.2.3 by failing to ensure that the decorative panels and/or suspended ceiling at the top of the elevator in question were adequately supported and sufficiently secure so that they would not become displace or dislodged in ordinary service;

b.     The Hotel violated § 2.14.1.2.4 by failing to ensure that the decorative panels and/or suspended ceiling at the top of the elevator in question could not be loosened or removed without the use of common tools;

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

c.     The Hotel violated § 2.27.1.1.1 by failing to ensure authorized personnel were staffed to maintain and monitor two way communication between the Hotel and elevator occupants;

d.     The Hotel violated § 2.27.1.1.2 by failing to ensure that additional on- or off-site locations would be staffed by authorized personnel to receive two-way communication from occupied elevators;

e.     The Hotel violated § 2.27.1.1.3 by transmitting the two-way communication from the elevator to an automated answering system, not authorized personnel designated to answer such calls;

f.     The Hotel violated §§ 2.27.1.1.3 and/or .4 by prematurely terminating the two-way communications with the elevator car which contained Plaintiff without verifying his safety;

g.     The Hotel violated §§ 8.4.4.1.1 and/or .2 by failing to ensure that an appropriate escape mechanism was in place to allow trapped occupants to escape the elevator; and

h.     The Hotel violated Missouri Code of State Regulations, Title 11, Div. 40, Chapters 5-080 and 5-090 by failing to ensure that the elevator in question was properly inspected prior to being put into use by the general public.

43.     Plaintiff Matthew Carron fell within the category of persons enumerated in The Code, § 1.2, as someone whose "life and limb" shall be protected, and a member of the public whose "welfare" shall be preserved.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

44.     Plaintiff Matthew Carron fell within the category of persons enumerated in 11 C.S.R. 40-5.010 as a "member of the general public" and an "invitee" generally expected to use elevator equipment.

45.     Plaintiff Matthew Carron's injury is of the type that The Code and the Missouri State Regulations are intended to prevent against.

46.     As a direct and proximate result of the negligence *per se* of the Hotel, by and through its agents and/or employees, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

47.     The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff Matthew Carron prays for judgment against Defendant TLG 634 Grand LLC d/b/a The Angad Arts Hotel on Count II of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

<u>COUNT III</u>
**PREMISES LIABILITY OF DEFENDANT TLG 634 GRAND LLC**

48.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

49.    At all times referenced herein, The Hotel was the owner and/or occupier of the land which contained the elevator described in this Petition.

50.    Plaintiff was an invitee at the time of his injuries in that he entered the Hotel with the Hotel's consent for the mutual benefit of both the Hotel and the Plaintiff.

51.    At all times referenced herein, the elevator constituted a dangerous condition of the premises that was not reasonably safe, to wit:

      a.    The elevator contained inadequately secured ceiling panels;

      b.    The elevator contained unreasonably sharp ceiling components;

      c.    The elevator contained a faulty two-way communications system, and/or an insufficiently manned two-way communication system; and/or

      d.    The elevator contained insufficient emergency exits.

52.    The Hotel knew, or through the use of ordinary care, should have known about the dangerous condition of the elevator, as described herein.

53.    The Hotel failed to use ordinary care to remedy any of the dangerous conditions of the elevator, remove any of the dangerous conditions of the elevator, or warn users of the elevator of the potential dangers faced.

54.    As a direct and proximate result of the acts or omissions of the Hotel, by and through its agents and/or employees, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

55.     The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff Matthew Carron prays for judgment against Defendant TLG 634 Grand LLC d/b/a The Angad Arts Hotel on Count III of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

**COUNT IV**
**STRICT LIABILITY FOR PRODUCT DEFECT**
**OF DEFENDANT THYSSENKRUPP ELEVATOR CORPORATION**

56.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

57.     Defendant TKE, in the course of their business, designed, manufactured, sold and/or distributed the subject elevator in a defective and unreasonably dangerous condition.

58.     The elevator was defective and unreasonably dangerous when put to a reasonably anticipated use because:

      a.   It contained inadequately secured ceiling panels;

      b.   It had unreasonably sharp ceiling components;

      c.   It had faulty two-way communications; and/or

      d.   It contained insufficient emergency exits.

59.     On October 20, 2019, the subject elevator was unreasonably dangerous when put to a reasonably anticipated use as described above, and Plaintiff was injured as a direct result of

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

such defective condition as existed when the product was designed, manufactured, sold and/or distributed by Defendant TKE.

60.     At the time of Plaintiff's injuries, Plaintiff was using the elevator in a manner reasonably anticipated by Defendant.

61.     As a direct and proximate result of the defective and unreasonably dangerous condition of the elevator, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

62.     The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff Matthew Carron prays for judgment against ThyssenKrupp Elevator Corporation on Count IV of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

**COUNT V**
**STRICT LIABILITY FOR FAILURE TO WARN**
**DEFENDANT THYSSENKRUPP ELEVATOR CORPORATION**

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

63.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

64.     Defendant TKE, in the course of their business, designed, manufactured, sold and/or distributed the subject elevator. which:

65.     The elevator was defective and unreasonably dangerous when put to a reasonably anticipated use because:

        a.   It contained inadequately secured ceiling panels;

        b.   It had unreasonably sharp ceiling components;

        c.   It had faulty two-way communications; and/or

        d.   It contained insufficient emergency exits.

66.     On October 20, 2019, the subject elevator was unreasonably dangerous when put to a reasonably anticipated use, as described above, without knowledge of the dangerous characteristics of said elevator, and Plaintiff was injured as a direct result of such a failure to warn as it existed when the product was designed, manufactured, sold and/or distributed by Defendant TKE.

67.     At the time of Plaintiff's injuries, Plaintiff was using the elevator in a manner reasonably anticipated by Defendant.

68.     Defendant TKE did not give adequate warnings of the dangers of the elevator and the potential for the elevator to contain sharp edges and surfaces which could cause severe injury to life and limb.

69.     The elevator was used in a manner reasonably anticipated by the average user of such an elevator, including one who may become trapped in an immobile elevator.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

70.    As a direct and proximate result of failure to warn about the unreasonably dangerous condition of the elevator, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

71.    The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff Matthew Carron prays for judgment against ThyssenKrupp Elevator Corporation on Count V of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

## COUNT VI
## NEGLIGENCE OF DEFENDANT THYSSENKRUPP ELEVATOR CORPORATION FOR MANUFACTURE AND/OR DESIGN

72.    Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

73.    Defendant TKE, in the course of their business, designed, manufactured, sold and/or distributed the subject elevator in a defective and unreasonably dangerous condition.

74.    The elevator was defective and unreasonably dangerous when put to a reasonably anticipated use because:

a.    It contained inadequately secured ceiling panels;

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

b.  It had unreasonably sharp ceiling components;

c.  It had faulty two-way communications; and/or

d.  It contained insufficient emergency exits.

75.  Defendant TKE, through its agents and servants, was negligent and violated its legal duty of care in one or more of the following respects:

a.  Defendant failed to use ordinary care to manufacture the elevator in a reasonably safe condition;

b.  Defendant failed to use ordinary care to design the elevator in a reasonably safe condition;

c.  Defendant supplied, delivered, and furnished the elevator in an unsafe manner and condition;

d.  Defendant failed to adequately test or investigate hazards of the elevator; and

e.  Defendant knew or should have known of the defective and unreasonably dangerous condition of its product and failed to recall and/or retrofit the product.

76.  At the time of Plaintiff's injuries, Plaintiff was using the elevator in a manner reasonably anticipated by Defendant.

77.  As a direct and proximate result of the negligent acts or omissions of Defendant ThyssenKrupp Elevator Corporation, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

78.     The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff Matthew Carron prays for judgment against ThyssenKrupp Elevator Corporation on Count VI of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

## <u>COUNT VII</u>
## NEGLIGENCE OF DEFENDANT THYSSENKRUPP ELEVATOR CORPORATION FOR A FAILURE TO WARN

79.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

80.     Defendant TKE, in the course of their business, designed, manufactured, sold and/or distributed the subject elevator in a defective and unreasonably dangerous condition.

81.     The elevator was defective and unreasonably dangerous when put to a reasonably anticipated use because:

        a.   It contained inadequately secured ceiling panels;

        b.   It had unreasonably sharp ceiling components;

        c.   It had faulty two-way communications; and/or

        d.   It contained insufficient emergency exits.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

82.     Defendant TKE, through its agents and servants, was negligent and violated its legal duty of care in one or more of the following respects:

        a.     Defendant failed to use ordinary care to adequately warn of the risk of harm presented by the elevator;

        b.     Defendant failed to properly warn, train, and/or instruct users regarding the elevator's use and safety hazards; and,

        c.     Defendant knew or should have known of the defective and unreasonably dangerous condition of its product and lack of warnings thereof and failed to recall, retrofit, and/or supplement the instructions of the product.

83.     At the time of Plaintiff's injuries, Plaintiff was using the elevator in a manner reasonably anticipated by Defendant.

84.     As a direct and proximate result of the negligent acts or omissions of Defendant ThyssenKrupp Elevator Corporation, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

85.     The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

WHEREFORE, Plaintiff Matthew Carron prays for judgment against ThyssenKrupp Elevator Corporation on Count VII of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

**COUNT VIII**
**NEGLIGENCE *PER SE* OF DEFENDANT THYSSENKRUPP ELEVATOR CORPORATION**

86.     Plaintiff incorporates by reference all previously stated paragraphs as if fully plead herein.

87.     TKE violated multiple sections of The Code, thereby constituting negligence *per se*, to wit:

a.     TKE violated § 2.14.1.2.3 by failing to ensure that the decorative panels and/or suspended ceiling at the top of the elevator in question were adequately supported and sufficiently secure so that they would not become displace or dislodged in ordinary service;

b.     TKE violated § 2.14.1.2.4 by failing to ensure that the decorative panels and/or suspended ceiling at the top of the elevator in question could not be loosened or removed without the use of common tools;

c.     TKE violated §§ 8.4.4.1.1 and/or .2 by failing to ensure that an appropriate escape mechanism was in place to allow trapped occupants to escape the elevator; and

88.     Plaintiff Matthew Carron fell within the category of persons enumerated in The Code, § 1.2, as someone whose "life and limb" shall be protected, and a member of the public whose "welfare" shall be preserved.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

89.     Plaintiff Matthew Carron's injury is of the type that The Code is intended to prevent against.

90.     As a direct and proximate result of the negligence *per se* of TKE, by and through its agents and/or employees, Plaintiff Matthew Carron sustained severe injuries including, but not limited to, an amputated left ring finger and degloved left pinky finger; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body; he sustained a significant loss of mobility and disability which is permanent; he is permanently disfigured and deformed; he has sought and received medical care and attention, his ability to enjoy the ordinary pursuits of life has been permanently impaired and diminished.

91.     The aforesaid conduct of Defendants constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including plaintiff, thus justifying and requiring punitive damages to be assessed against said defendant in a sum that will deter said defendant and others from such misconduct in the future.

WHEREFORE, Plaintiff Matthew Carron prays for judgment against Defendant ThyssenKrupp Elevator Corporation on Count VIII of this Petition in an amount in excess of Twenty-Five Thousand Dollars that is fair, just and reasonable under the circumstances, and for such other and further Orders that seem just and proper.

Electronically Filed - City of St. Louis - March 11, 2021 - 04:56 PM

Respectfully submitted,

KEANE LAW LLC

By: /s/ *Ryan Keane*
Ryan A. Keane, # 62112
Steven Duke, # 68034
7777 Bonhomme Ave, Ste 1600
St. Louis, MO 63105
Ph: (314) 391-4700
Fx: (314) 244-3778
ryan@keanelawllc.com
steve@keanelawllc.com

*Attorneys for Plaintiff*